FILED

MAY 2 1 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TENNESSEE**

VLADIMIR R. KRUGLYAK,

Plaintiff,

vs.

KSM CARRIER GROUP, INC.,

DOT# 2641210,

MIHAIL KRSTESKI ET. AL,

Defendants.

Case No. 2:25-CV-82

Corker/Wyrick

## VERIFIED COMPLAINT

NOW COMES Plaintiff VLADIMIR KRUGLYAK ("Plaintiff"), acting *pro se*, and files this Complaint against Defendants KSM CARRIER GROUP, INC., A2B CARGO, INC., MIHAIL KRSTESKI, and its agents, JOHN WILLIAMS, JEREMY BUSH, NICK POPE, MAGDALENA JOVOVICH and OTHER UNKNOWN Agents (collectively, "Defendants"), and alleges as follows:

### I.   INTRODUCTION

1.   This action arises from a deliberate and systematic scheme by Defendant KSM Carrier Group, Inc. ("KSM") — acting through its agents and under the direction of its owner Mihail Krsteski — to misclassify Plaintiff as an independent contractor while exerting the control and dominance of an employer. KSM imposed a sham lease-purchase scheme and a bait-and-switch advertising model to skim revenue, misappropriate lease payments, and deprive Plaintiff of wages, federal protections, and access to benefits.

2. Defendant's conduct constitutes violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, fraudulent inducement, unjust enrichment, conversion, breach of contract, civil conspiracy, tortious interference, and wage law violations. This action seeks relief for economic losses, stolen lease proceeds, unpaid wages, emotional harm, misclassification, and tax fraud.

3. KSM retained and skimmed undisclosed portions of Plaintiff's earned freight revenue, fraudulently issued an IRS Form 1099 to falsely claim Plaintiff was an independent contractor, and intentionally concealed freight load confirmations and accounting documents, all while exercising complete control over the Plaintiff's daily activities.

4. Defendant's fraud also included false advertisements (Exhibit A), false promises of lease purchase of the equipment (Exhibit N) and business ownership (Exhibit O), misrepresentations by agents (Exhibit B), concealment of true pay structure (Exhibit M), and false threats related to insurance claims (Exhibit K). KSM and its agents also wrongfully terminated Plaintiff and refused to pay earned revenue, wages, reimbursements, and security deposits (Exhibits F and G).

5. Defendant operated as an enterprise engaging in multiple acts of wire fraud, mail fraud, fraudulent misclassification, and commercial deception. Hence, Plaintiff brings this action pursuant to RICO, 18 U.S.C. § 1961 et seq., Sherman Act, 15 U.S.C. § 1, et seq., Truth-in-Leasing Act, 49 U.S.C. § 14704, and 49 CFR § 376.12, and asserts additional tort claims under the laws of Tennessee and Federal labor and tax standards, based on fraud, misrepresentation, and unlawful control over Plaintiff and his commercial cargo transfer operations under the guise of an "independent contractor" relationship.

6. Defendants engaged in a pattern of deceptive practices to enrich themselves at Plaintiff's expense, including but not limited to: a) Fraudulent Inducement: Misrepresenting the nature of the

lease-purchase program and operational independence; b) RICO Violations: Concealing actual costs, inflating fees, and falsifying rate confirmations; c) Restraint of Trade: Illegally restricting Plaintiff's use of equipment, choice of loads and routes; d) Tax Fraud: Misclassifying Plaintiff as an independent contractor while exerting employer-like control; e) Breach of Contract: failing to pay under the terms of the contract; and f) Conversion: Taking and unlawfully withholding earned revenue and security deposits. Plaintiff seeks compensatory, punitive, and treble damages, as well as injunctive relief.

## II.     JURISDICTION AND VENUE

7.  The amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. §1332.

8.  A substantial part of this litigation arises under the laws of the United States of America. 28 U.S.C §§1331 and 1337.

9.  This Court has jurisdiction under: 28 U.S.C. § 1331 (federal question, including RICO claims under 18 U.S.C. § 1962); 28 U.S.C. § 1367 (supplemental jurisdiction over state-law claims); 49 U.S.C. § 14704 (Truth-in-Leasing Act); and The Sherman Act, 15 U.S.C. § 1 (restraint of trade).

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events occurred in this District, including Plaintiff's residence in Bristol, Tennessee, and Defendants' fraudulent communications pre-contract directed here.

11. The Defendants have their principal places of business at official locations in the States of Illinois at 2216 W 167th St, Markham IL. 60428 and Indiana at 2011 N Griffith Blvd suite B , Griffith, IN 46319. 28 U.S.C. § 1391(a) (3).

12. Defendants maintain BOC-3 Service Processing Agent in the State of Tennessee: Multi-States Agent for Process, Inc., 80 Nowell Road PO Box 10546, Medina, TN 38355. Phone: 800-238-8814, where Summons and Complaint can be served.

13. Plaintiff previously filed a related action in the State of Indiana, Lake County Superior Court, which was voluntarily dismissed on May 12, 2025 by decision of the Court without prejudice under Indiana Trial Rule 41(A)(2), preserving all claims for refiling in this Court.

### III. PARTIES

14. Plaintiff: Vladimir Kruglyak is a commercial driver and resident of Bristol, Tennessee. He entered into a purported independent contractor agreement with Defendants in April 2021.

15. Defendants: KSM Carrier Group, Inc., used to advertise lease purchase program and independent contract with main office in the State of Indiana 2011 N Griffith Blvd suite B, Griffith, IN 46319 and office-yard location in Illinois, 2216 W 167th St, Markham IL. 60428, motor carrier (MC # 920445; DOT# 2641210) controlled by Mihail Krsteski.

16. A2B Cargo, Inc.: A sister company of KSM, used to advertise lease-purchase and independent contract opportunities.

17. Mihail Krsteski: Principal of KSM and A2B, who directed the fraudulent scheme of false independence and revenue skimming. John Williams: Recruiter who misrepresented the terms of the contract. Jeremy Bush: Safety director who unlawfully terminated Plaintiff's contract. Nick Pope: Dispatcher who imposed illegal restraints and operational controls; Magdalena Jovovich: KSM and A2B Cargo accountant who unlawfully retained portions of revenue and security deposits.

## IV.    FACTUAL BACKGROUND (relevant to all causes of action)

18. On or about April 11, 2021, Plaintiff responded to the "lease purchase" contract opportunity advertisement posted by A2B Cargo (known as a sister subsidiary company controlled by KSM Carrier Group, Inc. and its Principal Mihail Krsteski) using third party's online platform called Driver's Pulse App by Tenn Street. The copy of the initial advertisement is attached herein as **Exhibit A**.

19. On or about April 12, 2021, the recruiter John Williams from KSM Carrier Group answered Plaintiff's inquiry by email with additional advertisement and information, attached herein as **Exhibit B**, about KSM Carrier Group's "independent contractor" lease purchase opportunity. John Williams also represented to Plaintiff over the phone that KSM Carrier Group will not use forced dispatch and will allow Plaintiff to plan his own routes and negotiate rates directly with freight brokers. After this mutual acceptance of verbal terms, John Williams invited Plaintiff to submit his driving record information for screening.

20. Relying on the aforementioned representations, Plaintiff submitted his application along with DOT required CDL driving history through Driver Pulse online portal for screening and background check.

21. On or about April 15, 2021, recruiter John Williams confirmed completion of the screening of the Plaintiffs commercial driving record and experience to his standard and satisfaction. John Williams then booked a rental car for Plaintiff and drug test at the nearest clinic and invited Plaintiff to attend orientation at KSM Carrier Group's terminal in Chicago, Illinois and promised "long and successful partnership," as stated in the email messages attached herein as **Exhibit C**.

22. On or about April 21, 2021, Plaintiff arrived at the terminal, completed safety orientation administered by Jeremy Bush (allegedly retired DOT officer), and was offered to sign the contract, attached herein as **Exhibit D**.

23. On or about April 21, 2021, Mihail Krsteski , on behalf of KSM Carrier Group, has met in person with Plaintiff and authorized him to access the DAT load board, to search load market, and negotiate rates with freight brokers using MC number of KSM Carrier Group. The load information chosen by Plaintiff, with agreed upon rate, had to then be forwarded to the KSM dispatcher for the final approval of the broker's credit rating and booking with the freight broker by signing the rate confirmation.

24. On or about April 21, 2021, Plaintiff received a voice phone call from Nick Pope, representing himself as a Fleet Manager, and inquired Plaintiff about whether or not Plaintiff has submitted application for W-4 employment.

25. Through the end of April and during the month of May, 2021, multiple people, agents of Defendant Krsteski, contacted Plaintiff and interfered with the "independent contractor" operations, including new controlling directions as to the use of the trailer, choice of routes, and market limitations, as indicated in the attached here as **Exhibit E** text and email messages.

26. On or about June 2, 2021, Plaintiff was asked to appear in person at the office for the alleged license tag renewal, and subsequently received a call and a message, attached herein as **Exhibit F**, about the 52 week year contract termination due to illegal, not commercial and unknown to Plaintiff alleged "safety" reason, in breach of the Paragraph 2 and 4 of the Contract, and after only six weeks into the contract without a cause, without prior notice, and without final payment for the earned weekly revenue and release of deposit.

27. Plaintiff subsequently, and after expiration of the 45 days of the contractual final settlement period, requested from Defendants his earning and deposits to be paid a's indicated in the Demand message and letter, attached herein as **Exhibit G**, but Defendants ignored this and other requests to pay by Plaintiff *via* phone and texts.

28. On or about January 21, 2022, Defendants sent to Plaintiff his 1099 Tax Form, attached herein as **Exhibit H**, containing Illinois registration of the employer.

29. Pre-Contract Policy of the Operational Control: The "About Us" section of the KSM website, attached hereto as **Exhibit I**, shows that operational control was a matter of existing policy, which was not disclosed to Plaintiff before signing the contract. This supports the argument that Defendants knew or should have known that their representations of independence were false at the time they were made.

30. Google Reviews: Attached hereto as **Exhibit J** are Google reviews from other drivers who had similar experiences with operational control and issues with security deposits, suggesting a pattern of deceptive practices by Defendants.

31. Evidence of Liability Threats by Nick Pope: Attached hereto as **Exhibit K** are messages from Nick Pope threatening financial liability for cargo damage, despite Plaintiff having cargo and liability insurance policy under the contract with KSM. These messages further demonstrate Defendants' control and intent to deceive.

32. Evidence of Conversion and Tortious Interference with Third Party Contracts: Plaintiff had a one-way load transfer contract with J.H. Ross freight broker to deliver cargo, but Defendants/Brokers interfered with this contract by not allowing equipment sharing and pocketing the revenue money paid by the broker. A copy of the signed by the receiver Bill of Lading, confirming delivery of the cargo contracted for is attached hereto as **Exhibit L**.

33. Evidence of False Financial Settlements and Accounting Fraud: **Exhibit M**.

34. Evidence of False Lease to Purchase Advertisement: **Exhibit N**.

35. Evidence of Pre-Contract Promise as a Guidelines on How to Own and Operate Transportation Business: **Exhibit O**.

## V.    CAUSES OF ACTION

### COUNT I

### (CIVIL RICO – 18 U.S.C. § 1962(c) & (d))

36. Plaintiffs incorporate paragraphs 1 through 35 as if fully set forth herein and further alleges as follows:

37. Enterprise Definition: Defendants KSM Carrier Group, Inc., its subsidiaries (including A2B Cargo), and their principals (Mihail Krsteski, John Williams, Nick Pope, and Boris Panov) constitute an "enterprise" under 18 U.S.C. § 1961(4). The enterprise operated through:

    a)    A hierarchical structure (Krsteski controlled subsidiaries, recruiters, and dispatchers);

    b)    Common tools (Driver's Pulse platform, DAT load board, interstate freight brokerage);

    c)    Continuous coordination to recruit drivers under false pretenses and extract profits.

38. Interstate Commerce: The enterprise engaged in activities affecting interstate commerce by:

    a)    Recruiting drivers across state lines (Plaintiff traveled from Tennessee to Illinois);

    b)    Brokering freight shipments nationwide;

c)      Using electronic platforms (email, load boards) for cross-state transactions.

39. <u>Pattern of Racketeering Activity</u>: Defendants conducted the enterprise's affairs through a pattern of racketeering under § 1961(5), including:

    a)      Mail Fraud (18 U.S.C. § 1341):

        i.    False advertisements on Driver's Pulse (*Exhibit A*) promising "independent contractor" status and route autonomy.

        ii.    Emails (*Exhibits B, C, E*) misrepresenting terms of the lease-purchase agreement (*Exhibit N*).

    b)      Wire Fraud (18 U.S.C. § 1343):

        i.    Phone calls (April 12, 2021) falsely assuring no forced dispatch.

        ii.    Text messages (*Exhibit E*) imposing unauthorized operational controls.

    c)      Money Laundering (18 U.S.C. § 1956):

        i.    Withholding deposits/earnings (*Exhibits F, G*) while issuing falsified 1099 forms (*Exhibit H*) to conceal employment misclassification.

40. <u>Fraudulent Scheme</u>: Defendants' material misrepresentations and omissions included:

    a)      Concealing operational control policies (*Exhibit I*) while advertising independence.

    b)      Falsely claiming drivers could "negotiate rates" (*Exhibit B*), purchase the equipment through lease (*Exhibit N*) and operate their "own" business (*Exhibit O*) while KSM and its owner, Mihail Krsteski, through KSM agents enforced operational control and limited use of equipment (Panov's policy message).

    c)      Threatening liability (*Exhibit K*) for insured risks to intimidate drivers into compliance.

41. <u>Proximate Cause & Injury</u>: Plaintiff relied on Defendants' fraud, resulting in:

    a)       Financial losses (unpaid earnings, withheld deposits);

    b)       Contractual harm (breach of lease-purchase terms);

    c)       Statutory damages under Tennessee Code T.C.A. § 62-5-417, T.C.A. § 47-50-109.

42. Conspiracy (§ 1962(d)): All Defendants conspired to violate § 1962(c) by:

    a)       Recruiters (Williams) luring drivers with false promises;

    b)       Dispatchers (Pope, Panov) enforcing hidden controls;

    c)       Krsteski orchestrating the scheme and profiting from driver exploitation.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court issues the following relief:

    i.       Treble damages under § 1964(c) for unpaid wages, deposits, and fraud losses;

    ii.       Injunctive relief dissolving the enterprise's fraudulent lease-purchase program;

    iii.       Travel expenses and costs of litigation under § 1964(c);

    iv.       Equitable remedies:

        a)       Constructive trust on withheld deposits;

        b)       Accounting of all driver-related profits;

    v.       Punitive damages for intentional fraud.

## COUNT II

### CIVIL RICO VIOLATION (18 U.S.C. § 1962(c)) — TRUTH IN LEASING ACT

### 49 U.S.C. § 14704

43. Plaintiff incorporates by reference the preceding paragraphs one through 42 as if fully set forth herein and further alleges as follows:

**A. ENTERPRISE AND INTERSTATE COMMERCE**

44. Enterprise Definition: Defendants KSM Carrier Group, Inc., A2B Cargo, Inc., and their principals (Mihail Krsteski, Nick Pope, John Williams, Jeremy Bush) constitute an "enterprise" under 18 U.S.C. § 1961(4), engaged in interstate freight transportation and leasing operations.

45. Interstate Nexus: The enterprise's activities affected commerce by:

    a)    Recruiting drivers across state lines (Plaintiff traveled from Tennessee to Illinois);

    b)    Brokering freight shipments nationwide;

    c)    Using electronic platforms (e.g., DAT load board, emails) to obtain original rate confirmation documents and transmit fraudulent lease terms.

**B. PATTERN OF RACKETEERING ACTIVITY**

46. Defendants violated the Truth in Leasing Act, 49 C.F.R. § 376.12, which mandates disclosure of lease terms and prohibits unfair practices in trucking lease agreements. Their conduct constituted a pattern of racketeering under 18 U.S.C. § 1961(1)(B), including:

    a)  Mail/Wire Fraud (18 U.S.C. §§ 1341, 1343): Fraudulent Lease Documents (Exhibit D):

        i.    Failed to disclose actual control over Plaintiff's operations (e.g., forced dispatch, route restrictions) as required by § 376.12(c)(1).

        ii.    Concealed revenue skimming (*Exhibit M*), violating § 376.12(h) (prohibiting unauthorized deductions).

47. False Advertising (*Exhibits A, B, N, O*):

    a)  Promised "independent contractor" status, "no forced dispatch," and equity ownership in leased equipment (*Exhibits N, O*) while hiding internal policies (*Exhibit I*) showing absolute control.

b) Misrepresented revenue potential ("5,000–7,000 weekly," per recruiter's pre-contract promises (*Exhibit M*) while skimming payments (in re: *Exhibit O*, $350 withheld).

48. Money Laundering (18 U.S.C. § 1956)

a) Structured financial transactions to hide skimmed revenue (e.g., diverting funds through A2B Cargo accounts).

b) Issued falsified 1099 forms (*Exhibit H*) to disguise wage theft as "contractor income."

## C. TRUTH IN LEASING VIOLATIONS AS RICO PREDICATES

49. Defendants' violations of 49 C.F.R. § 376.12 were part of a fraudulent scheme to exploit drivers, including:

i.   § 376.12(c)(4): Failed to provide copies of signed leases or explain escrow withholdings.

ii.   § 376.12(d): Illegally retained Plaintiff's security deposit post-termination (Exhibit G).

iii.   § 376.12(g): Withheld load confirmations and rate sheets (Exhibit L), preventing Plaintiff from verifying payments.

iv.   § 376.12(k): Misrepresented lease-purchase terms (Exhibits N, O) by promising equity ownership while retaining control over equipment and revenue.

## D. FRAUDULENT INDUCEMENT THROUGH "KNOW YOUR BUSINESS" MATERIALS

50. <u>Defendants compounded their fraud by</u>: Providing fuel efficiency and cost-per-mile guidance (*Exhibit O*) during orientation to create a false impression of operational independence, while simultaneously:

  i. Controlling fuel purchases through restricted discounts via use of KSM's Love's, Pilot/Flying J Fuel Card;

  ii. Skimming revenue to render cost-saving measures futile (*Exhibit N*).

**E. INJURY AND PROXIMATE CAUSE**

51. Plaintiff suffered:

  i. Financial harm: Unpaid wages ($8,425.75, *Exhibit G*), skimmed revenue (23% per load from undisclosed original amount, *Exhibit M*).

  ii. Regulatory harm: Denied transparency required by federal leasing rules.

  iii. Tax liabilities: Falsified 1099 forms (*Exhibit H*) triggered IRS scrutiny.

**PRAYER FOR RELIEF**

Plaintiff respectfully request that this Court grants the following relief:

  i. Treble damages under 18 U.S.C. § 1964(c) for unpaid wages, stolen equity and lease payments, as well as tax penalties.

  ii. Injunctive relief compelling Defendants to:

  a) Disclose all lease terms and revenue records per § 376.12;

  b) Cease unlawful deductions and deposit retention.

  iii. Constructive trust on all funds obtained through leasing fraud.

  iv. Travel expenses and costs.

13 of 29

## COUNT III

## (CIVIL RICO – 18 U.S.C. § 1962(c) & (d))

### (Fraudulent Concealment of Rate Confirmation Documents & Revenue Skimming)

52. Plaintiffs incorporate paragraphs 1 through 51 as if fully set forth herein.

53. <u>Enterprise & Interstate Commerce</u>:

    a) Defendants KSM Carrier Group, Inc., A2B Cargo, and their principals (Mihail Krsteski, Nick Pope, Boris Panov) constituted an ongoing enterprise under 18 U.S.C. § 1961(4), engaged in interstate freight brokerage and leasing operations affecting commerce under 49 U.S.C. § 13102.

54. <u>Pattern of Racketeering Activity</u>: Defendants conducted the enterprise's affairs through a pattern of racketeering under 18 U.S.C. § 1961(1)(B), including:

a) Mail/Wire Fraud (18 U.S.C. §§ 1341, 1343):

    i. Concealing rate confirmations: Dispatchers (Pope/Panov) intentionally withheld broker rate sheets (*Exhibit L* – sample redacted confirmation) while providing Plaintiff only fabricated "settlement" amounts.

    ii. False settlements: Plaintiff received 77% of a falsified rate, while Defendants pocketed the true broker payment (violating ¶4 of the Contract; in re: *Exhibit D*).

    iii. Electronic transmissions: Fraudulent settlements were communicated *via* emails/texts (Exhibits C, E) and processed through interstate banking.

b) Money Laundering (18 U.S.C. § 1956):

    i. Structuring transactions to hide skimming by diverting funds through A2B Cargo accounts.

55. Fraudulent Scheme Particulars:

    a) Defendants systematically:

        i.   Denied access to DAT/Truckstop.com records (tools used to verify broker rates).

        ii.  Refused to provide signed rate confirmations (industry standard under 49 C.F.R. § 371.3).

        iii. Falsified settlement statements (Exhibit M – sample statement with discrepancies) to underreport revenue.

56. Intent & Concealment:

    a) Defendants acted with scienter by:

        i.   Training dispatchers (per *Exhibit I* policies) to claim "confidentiality" as pretext to withhold rates.

        ii.  Threatening termination (*Exhibit F*) if Plaintiff demanded documentation.

        iii. Issuing 1099 forms (*Exhibit H*) to shift tax liability on inflated "income" from skimmed settlements.

57. Injury & Proximate Cause:

    a) Plaintiff suffered:

        i.   Lost wages (23% plus hidden amounts of rightful revenue skimmed per load);

        ii.  Tax misrepresentation (1099 reported income that was in fact a wage income, and not included original rate confirmation amounts, deducted lease payments while retaining no equity of ownership due to Plaintiff under lease purchase advertisement; in re: *Exhibit N*);

        iii. Regulatory harm (denied transparency under Truth-in-Leasing Act).

58. Conspiracy (§ 1962(d)):

a) Defendants agreed to violate RICO through:

      i.   Krsteski approving the skimming structure;

     ii.   Pope/Panov executing the fraud;

    iii.  A2B Cargo laundering proceeds.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grants the following relief:

      i.   Treble damages under § 1964(c) for skimmed revenue (calculated via forensic accounting);

     ii.   Injunctive relief compelling production of all rate confirmations (2019–present);

    iii.  Constructive trust on Defendants' hidden freight brokerage accounts;

    iv.  Tax indemnification for IRS liabilities caused by falsified 1099s.

## COUNT IV

### (FRAUDULENT INDUCEMENT)

59. Plaintiff incorporates paragraphs 1 through 58 as if fully set forth herein.

60. Fraudulent Statements:

A. Between April 12–21, 2021, Defendants KSM Carrier Group, Mihail Krsteski, and their agent John Williams (*via* phone/email) made the following material misrepresentations to induce Plaintiff into signing the lease-purchase agreement (*Exhibit D*):

    <u>Statement 1</u>: Promised Plaintiff an "independent contractor" role with:

      a)  No forced dispatch (*Exhibits B, C*);

      b)  Autonomy to negotiate rates directly with brokers;

c) $7,500+ weekly revenue for 52 weeks (*Exhibit C*: "long and successful partnership").

d) Fraudulent Intent: Defendants knew they would impose dispatcher control (*Exhibits E, K*) and block rate negotiations (Exhibit L – concealed rate confirmations).

Statement 2: Assured Plaintiff full operational independence (Exhibit B: "plan your own routes," *Exhibit O*: "Know Your Business").

a) Fraudulent Intent: Internal policies (*Exhibit I*) and Google reviews (*Exhibit J*) prove Defendants routinely deceived drivers.

61. Particularity of Fraud (Rule 9(b), *Iqbal/Twombly*):

    i. Who: John Williams (recruiter), acting for Krsteski/KSM.

    ii. When: April 12 (phone/Exhibit B), April 15 (email/*Exhibit C*), April 21 (in-person).

    iii. Where: Calls to Plaintiff's Tennessee number; emails to Plaintiff's Gmail account.

    iv. How: False promises of independence and earnings (*Exhibits B, C*) while hiding:

        - Forced dispatches (*Exhibit E*);

        - Revenue skimming (*Exhibit M*).

62. Justifiable Reliance & Damages:

    a) Plaintiff relied on Defendants' misrepresentations by:

    i. Signing the lease (*Exhibit D*);

    ii. Incurring relocation costs (rental car, drug test – *Exhibit C*);

    iii. Foregoing other contract opportunities.

    b) Direct Harm:

    i. Unpaid earnings ($8,425.75 – *Exhibit G*);

ii. Lost income ($345,000: $7,500/week x 46 weeks);

iii. Tax liabilities from misclassified 1099 (*Exhibit H*).

**PRAYER FOR RELIEF**

Plaintiff respectfully requests Judgement in its favor and against Defendants, jointly and severally granting the following relief:

i. Compensatory damages for:

a) Actual losses ($8,425.75 unpaid earnings);

b) Economic harm ($345,000 lost income from operating under true independent contract).

ii. Punitive damages (trebled as RICO predicate acts).

iii. Travel and litigation costs.

iv. Jury trial on all eligible claims.

## COUNT V

### PROMISSORY ESTOPPEL

#### (Revenue Share)

63. Plaintiffs incorporate paragraphs 1 through 62 as though they had been pled herein.

64. Defendants' promise to compensate Plaintiff with 77% of the amount paid by third parties was clear and definite.

65. Defendants knew or should have known that their promise of compensation would induce Plaintiffs to provide labor and services.

66. Defendants' promise of compensation did in fact induce Plaintiff to perform work for Defendants.

67. Plaintiffs were financially damaged by Defendants' failure to compensate them as promised.

68. Defendants fraudulently concealed the amount that they had been paid by the third parties.

69. By this conduct Plaintiffs have been injured in excess of $75,000.

**PRAYER FOR RELIEF**

Plaintiff prays that Judgement be entered against Defendants and in favor of Plaintiff as follows:

i.  For damages against Defendants, and each of them, jointly and severally, in an amount of $345,000;

ii.  An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

iii.  The imposition and execution of equitable liens and all other injunctive relief;

iv.  Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

v.  For such other damages, relief and pre-judgment interest as the court may deem just and proper to award Plaintiff's complete relief.

<u>**COUNT VI**</u>

**CONVERSION**

70. Plaintiffs incorporate paragraphs one through 69 as though they had been pled herein.

71. Plaintiffs performed labor and services for Defendants in good faith and with a reasonable expectation that they would receive full payment for their work.

72. Instead, Defendants converted a portion of this property to their own use.

73. <u>Unauthorized Control</u>: Plaintiff provided services to KSM Carrier Group under the terms of an independent contractor agreement. KSM Carrier Group, through its agents, including but not limited to accountant Magdalena Jovovich, John Williams, and Nick Pope, wrongfully exercised control over the Plaintiff's monetary property by failing to compensate Plaintiff for services rendered.

74. <u>Intent</u>: Defendants knowingly and intentionally withheld the monetary compensation due to Plaintiff, despite promises and agreements made to Plaintiff. Defendants' actions demonstrate an intentional and unauthorized exertion of control over Plaintiff's rightful funds.

75. <u>Deprivation</u>: As a direct and proximate result of Defendants' actions, Plaintiff has been deprived of the use and enjoyment of the funds due to him for services rendered. This deprivation includes, but is not limited to, the monetary value of the unpaid services and the additional costs incurred by Plaintiff, including travel expenses.

76. Plaintiff asked for the return of their property.

77. Defendants failed to return this property.

78. Plaintiff is entitled to three times the actual damages sustained, costs under Tennessee law.

79. Defendants fraudulently concealed the amount that they had been paid by the third parties.

80. By this conduct Plaintiffs have been injured in excess of $75,000.

**PRAYER FOR RELIEF**

Plaintiff prays that Judgement be entered against Defendants and in favor of Plaintiff as follows:

i. For damages against Defendants, and each of them, jointly and severally, in the amount of $345,000 (loss of $7,500 per week revenue for 46 weeks), plus $8,425.75 (unpaid earnings), and the amount duly trebled in accordance with Tennessee law, TCA § 62-5-417; TCA § 47-50-109, et. seq.

ii. For the costs of investigation and litigation reasonably incurred in accordance with Tennessee law.

iii. An accounting of all benefits, consideration and profits received and/or paid, directly or indirectly, including, but not limited to, the imposition of constructive trusts with tracing;

iv. The imposition and execution of equitable liens and all other injunctive relief;

v. Orders of divestiture of any interest, including real or personal property, money, or obligations or otherwise, wrongfully obtained through the proceeds of any funds acquired in the exercise of fraudulent conduct; and

vi. For such other damages, relief and pre-judgment interest as the court may deem just and proper to award plaintiff's complete relief.

## COUNT VII

### FRAUDELENT MISREPRESENTATION

81. Plaintiff incorporates by reference preceding paragraphs 1 through 80 as though fully set forth herein, and further alleges as follows:

a) Defendant knowingly and willfully made false and misleading statements regarding the nature, characteristics, and qualities of their "independent" contract. Specifically, Defendant's advertisements included the following false statements:

> i. That the Plaintiff will be able to control the planning of the routes, movement of the equipment, and revenue per load.
>
> ii. Defendants and their agents have subsequently interfered with Plaintiff's ability to plan routes, move the equipment, and control revenue of the load (in re: *Ex. E*, Boris Povin and Nick Pope Messages).

b) Plaintiff asserts that Defendant had knowledge that the statements of Defendants were false when made and/ or Defendants acted with reckless disregard for the truth. The basis for this assertion includes:

> i. Boris Povin's message to seek permission to move the trailer and Nick Pope's message controlling the routes (*Ex. E*).
>
> ii. Jeremy Bush statement of false safety violation (in Re: *Ex. F*).

82. Plaintiff alleges that Defendant intended for commercial drivers and consumers, including Plaintiff, to rely on the false statements in their decision to engage with the advertised contract. This intent is evidenced by:

a. Defendants targeted an audience of commercial driver license holders with experience and utilized strategy of inflating revenue, while offering no cost transportation to the terminal to influence decision to engage with the advertised contract opportunity.

b. Defendants utilized statements about new equipment and offered 24/7 support to build an impression of an honest and reliable partner;

c. Plaintiff further asserts that he, in fact, relied on the false statements made by Defendant. The actual reliance is demonstrated by:

> i. Accepting rental car reservation;

ii.Attending drug test set up by Defendants;

83. Plaintiff claims to have suffered damages as a direct result of relying on Defendant's false advertisement. The damages include:

    a.  Loss of revenue for services already performed and due under contract $8, 425.75;

    b.  Travel expenses, lost opportunities to earn future revenue at $7,500 per week for the remaining 46 weeks of planned performance under the contract, $345,000.

84. Plaintiff asserts that Defendant's false advertisement was the direct and proximate cause of Plaintiff's damages. This connection is established by the following:

    a. The said advertisement led Plaintiff to deal with unprofessional, deceptive, and inept agents of KSM and Krsteski;

    b. Had there was an advance disclosure that there will be arbitrary and coercive demands imposed beyond the terms of the contract, Plaintiff would not have accepted the advertised terms and instead went to seek another carrier;

85. KSM and its agents committed knowing violations of the Tennessee Consumer Protection Act (TCPA).

86. KSM agents committed the acts alleged in this Complaint with knowledge of their deceptive nature, and therefore committed knowing violations of the TCPA, subjecting it to penalties under TCA § 47-50-109, TCA § 62-5-417.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court enter judgment in its favor and against the Defendants jointly and severally, and grant the following relief:

( a ) Award actual $8,425.75 (unpaid earnings), economic $345,000 (loss of $7,500 per week revenue for 46 weeks), and compensatory damages plus interest in an amount to be determined at trial and Punitive (treble) damages if appropriate;

( b ) Award fees and costs incurred in connection with this action, and;

( c ) Any other relief that this court deems just and proper.

( d ) Plaintiff demands a trial by jury on all issues triable to a jury.


## COUNT VIII

### UNJUST ENRICHMENT/QUANTUM MERUIT

87. Plaintiffs incorporate paragraphs one through 86 as though they had been pled herein.

88. Plaintiffs performed labor and services for Defendants in good faith and with a reasonable expectation that they would receive full payment for their work.

89. Defendants received the benefits of Plaintiffs' labor and services but failed to pay Plaintiff for the fair and reasonable value of those services by failing to pay Plaintiffs 77% of the actual amount by third parties, withheld wages while exerting employment type of control, and benefitted from lease payments while providing no equity of ownership in the equipment.

90. Defendants fraudulently concealed the amount that they had been paid by the third parties and disclosed a false amount pocketing the difference.

91. By this conduct Plaintiffs have been injured in excess of $75,000.

**PRAYER FOR RELIEF**

Plaintiff prays that Judgement be entered against Defendants and in favor of Plaintiff as follows:

a) Award actual $8,425.75 (unpaid earnings), economic $345,000 (loss of $7,500 per week revenue for 46 weeks), and compensatory damages plus interest in an amount to be determined at trial and Punitive (treble) damages if appropriate;

b) Award fees and costs incurred in connection with this action, and;

c) Any other relief that this court deems just and proper.


## COUNT IX

### BREACH OF CONTRACT

92. Plaintiffs incorporate paragraphs one through 91 as though they had been pled herein.

93. Under his contract with Defendants, Plaintiff supposed to operate independently and receive 77% of the amount paid by the third parties to Defendants for the trucking of freight. The contract is attached as *Exhibit D*.

94. Upon information and belief, the Defendants misrepresented the independence nature of the contract and excreted daily operational control and falsified amounts paid by the third parties in multiple accounting settlements for Plaintiff's revenue account.

95. Defendants continued to exercise control despite Plaintiff's warnings that he is independent contractor and not an employee. Defendants then kept the difference portion of Plaintiff's revenue for themselves and fraudulently concealed the breach.

96. In doing so, the Defendants breached the parties' agreements. By this conduct Plaintiffs have been injured in excess of $75,000.

**PRAYER FOR RELIEF**

Plaintiff prays that Judgement be entered against Defendants and in favor of Plaintiff as follows:

a)  Award actual $8,425.75 (unpaid earnings), economic $345,000 (loss of $7,500 per week revenue for 46 weeks), and compensatory damages plus interest in an amount to be determined at trial and Punitive (treble) damages if appropriate;

b)  Award fees and costs incurred in connection with this action, and;

c)  Any other relief that this court deems just and proper.

## COUNT X

## RESTRAINT OF TRADE (SHERMAN ACT, 15 U.S.C. § 1 & TENNESSEE ANTITRUST LAW, T.C.A. § 47-25-101 et seq.)

97. Plaintiff incorporates by reference the preceding paragraphs one through 96 as if fully set forth herein and further alleges as follows:

### A.  JURISDICTION AND LEGAL STANDARDS

98. Federal Claim: This Court has jurisdiction under 15 U.S.C. § 15(a) (Sherman Act) and 28 U.S.C. § 1337. Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants' restraints were directed at and injured Plaintiff in this District.

99. State Claim: Supplemental jurisdiction exists under 28 U.S.C. § 1367 for violations of the Tennessee Trade Practices Act, T.C.A. § 47-25-103, which prohibits unreasonable restraints on trade.

### B.  DEFENDANTS' ANTICOMPETITIVE CONDUCT

100.        Defendants engaged in per se illegal restraints under 15 U.S.C. § 1 and T.C.A. § 47-25-103 through:

a.  Horizontal Restraints (Market Allocation): Equipment Control:

       i.    Prohibited Plaintiff from using KSM's MC/DOT numbers for loads not approved by Defendants (¶23, Exhibit E), effectively allocating customers to Defendants' preferred brokers.

      ii.    Restricted trailer usage to specific routes/markets (Exhibit E: "Boris Panov's May 2021 messages demanding permission for trailer moves").

    b.  Vertical Restraints (Tying Arrangement): Forced Plaintiff to use:

       i.    KSM's dispatch services for all loads (¶23: "final approval by KSM dispatcher");

      ii.    KSM's insurance and fuel programs (Exhibit D, ¶4; Exhibit M), despite lease terms promising independence (Exhibits B, C).

    c.  Group Boycott:

101.      Terminated Plaintiff's contract (¶26, Exhibit F) after he demanded rate transparency, coercing compliance with anticompetitive terms.

## C. SPECIFIC ACTS OF CONTROL (FACTUAL ENHANCEMENTS)

112.      Defendants' operational control destroyed Plaintiff's independence:

    i.    Load Approval: Required Plaintiff to submit all negotiated rates to KSM for "final approval" (¶23), despite promises of autonomy (¶19, Exhibit B).

    ii.    Route Restrictions: Dispatchers (Nick Pope/Boris Panov) dictated routes and markets (Exhibit E: "You must take I-80 West only").

    iii.    Equipment Lockout: Withheld MC/DOT numbers (¶26), preventing Plaintiff from working with other brokers.

    iv.    Financial Coercion: Threatened liability for insured cargo damage (Exhibit K) to intimidate compliance.

## D. INTERSTATE COMMERCE NEXUS

113. Defendants' conduct substantially affected interstate commerce by:

    i. Recruiting Plaintiff across state lines (TN to IL, ¶18–22);

    ii. Brokering nationwide freight shipments (*Exhibit L*: JH Ross bill of lading);

    iii. Using electronic platforms (DAT load board, emails) to enforce restraints.

## E. TENNESSEE ANTITRUST VIOLATIONS

114. Defendants violated T.C.A. § 47-25-103 by:

    i. Deceptive Inducement: Promised independence (*Exhibits B, N, O*) while hiding control policies (Exhibit I).

    ii. Monopolistic Practices: Dominated Plaintiff's access to loads/equipment, akin to *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818 (Tenn. 1994). Unlike *Quality Auto Parts* (where the court declined to recognize a new tort), Plaintiff's claim meets all elements of established antitrust law: *Per Se* Violations: Price-fixing (Exhibit M) and market allocation are per se illegal under *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940); Statutory Basis: T.C.A. § 47-25-103 expressly prohibits the exact conduct alleged here - restraints implemented through equipment control and fraudulent inducement.

## F. INJURY AND DAMAGES

115. Plaintiff suffered:

    i. Lost Wages: $8,425.75 unpaid (Exhibit G);

    ii. Diminished Earnings: $345,000 lost revenue (promised $7,500/week x 46 weeks);

    iii. Tax Harm: Falsified 1099 (*Exhibit H*) triggering IRS scrutiny.

## PRAYER FOR RELIEF

Plaintiff respectfully demands:

i.   Treble damages under 15 U.S.C. § 15(a) and T.C.A. § 47-25-107;

ii.  Injunctive relief barring:

      i.   Retaliation against Plaintiff through negative references;

iii. Legal fees and costs under 15 U.S.C. § 15(a);

iv.  Jury trial on all claims.

Dated: May 16, 2025
Bristol, Tennessee

Respectfully submitted by,

Vladimir Kruglyak, Plaintiff *Pro Se*
1216 Windsor Avenue
Bristol, TN 37620
E: kruglyak.vladimir@gmail.com
Ph: 423-972-7837

## VERIFICATION

I, Vladimir Kruglyak, am the Plaintiff in the above referenced action. I hereby declare under penalty of perjury that I read the foregoing Complaint and know the contents thereof to be true, except for the matters stated to be alleged based on information and belief as I believe them to be true.

Plaintiff's Signature: _____

Plaintiff's Name: **VLADIMIR KRUGLYAK**