UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| VLADIMIR KRUGLYAK, | ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CV-00082-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| KSM CARRIER GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Proceeding pro se, Plaintiff brings several claims against Defendants following the termination of his Independent Contractor Agreement with KSM Carrier Group, Inc. Defendants moved to dismiss pursuant to the doctrine of forum non conveniens [Doc. 10], to which Plaintiff responded in opposition [Doc. 18], and Defendants replied [Doc. 19]. For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

Plaintiff is a semi-truck driver who entered into a 52-week Independent Contractor Agreement with Defendant KSM Carrier Group, Inc. ("KSM") in April 2021. [Doc. 1, ¶¶ 22, 26]. KSM terminated the Agreement in June 2021. [*Id.* at ¶ 26].

Plaintiff alleges that Defendants misrepresented and interfered with the terms of the Agreement by treating him as an employee rather than an independent contractor. [*Id.* at ¶ 6]. Additionally, he claims that Defendants concealed costs, inflated fees, falsified rate confirmations, and withheld portions of Plaintiff's earned freight revenue and security deposits. [*Id.*]. Plaintiff now brings claims against KSM, its sister company A2B Cargo, Inc., and five KSM and A2B employees for civil RICO, fraud, fraudulent inducement, promissory estoppel, conversion,

fraudulent misrepresentation, unjust enrichment, breach of contract, and restraint of trade.[1]

In lieu of an answer, Defendants filed a motion to dismiss, arguing that the Agreement contains a mandatory forum selection clause. [Doc. 10]. The relevant provision of the Agreement—section 18—states the following: "This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Illinois and in event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state." [Doc. 1-4, pg. 11].

## II.     ANALYSIS

### A. Plaintiff's Procedural Concerns

As an initial matter, Plaintiff raises two "procedural deficiencies" with Defendants' motion. [Doc. 18, pg. 3]. First, he contends that Defendants failed to satisfy the Court's meet and confer requirement prior to filing the motion to dismiss. But Defendants met and conferred with Plaintiff via phone call and email two weeks prior to filing their motion. [Doc. 19-1]. In these communications, Defendants informed Plaintiff of their intention to file the motion as well as their purported grounds for the motion. [*Id.*]. Under the Court's Order Governing Motions to Dismiss [Doc. 5], Plaintiff was not entitled to a draft copy of the motion. Nor was he owed a "meaningful opportunity to resolve the dispute," as Defendants' argument that the Complaint was filed in the wrong forum is not a defect that could be resolved by filing an amended pleading. [Doc. 18; *see* Doc. 5].

---

[1]     Plaintiff previously attempted to pursue these claims in Indiana state court. After the Indiana court dismissed all but two of his claims, Plaintiff dismissed the lawsuit. *See Vladimir Kruglyak v. KSM Carrier Group, Inc., et al*, Lake County Superior Court, No. 45D03-2410-CT-001202 (filed Oct. 15, 2024).

Second, Plaintiff contends that by filing the motion to dismiss before answering the Complaint, Defendants waived various defenses under Federal Rule of Civil Procedure 12(b). This is false. Defendants may file a motion to dismiss "asserting any of the grounds listed in Rule 12 *before* serving an answer and the filing of such a motion alters the time period for filing an answer, in the event that the motion is denied." *Norris v. Murfreesboro Leased Hous. Assocs. I, LP*, No. 3:18-CV-00750, 2020 WL 2112267, at *2 (M.D. Tenn. May 4, 2020)(emphasis added); Fed. R. Civ. P. 12(a)(4).

As there are no procedural deficiencies with Defendants' motion, the Court will now consider the merits.

### B. The Forum Selection Clause

Defendants argue that this suit should be dismissed because the parties agreed to litigate in Illinois under the forum selection clause in the Independent Contractor Agreement. The Sixth Circuit has held that a forum selection clause should be upheld absent a strong showing that it should be set aside. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citation omitted); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (a valid forum-selection clause should be "given controlling weight in all but the most exceptional cases."). The appropriate method to enforce a valid forum-selection clause is through the doctrine of forum non conveniens. *Atl. Marine*, 571 U.S. at 60.

The Sixth Circuit has adopted a two-step approach when analyzing a forum non conveniens motion based on a forum selection clause. First, the Court must determine whether the forum-selection clause is "applicable, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, LLC, 16 F.4th 209, 216 (6th Cir. 2021). If it is, "*Atlantic Marine*'s modified forum-non-conveniens analysis applies." *Id.*

Beginning with the first step, the plain language of the Agreement is clear that the forum selection clause is applicable, mandatory, and valid. It states that "in the event of *any* dispute or litigation . . . suit *must* be brought in [Illinois]." [Doc. 1-4, pg. 11 (emphasis added)]. Forum selection clauses that include terms like 'must' are commonly considered mandatory. *Scepter, Inc. v. Nolan Transportation Grp., LLC*, 352 F. Supp. 3d 825 (M.D. Tenn. 2018) (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016)). And as the clause applies to "any dispute," it is applicable to this case arising from a dispute over the Defendants' actions pursuant to the Agreement.

KSM, as party to the Agreement, benefits from the forum selection clause as do the other Defendants. Non-signatories may enforce a contract's forum selection clause when those non-signatories are closely-related to the dispute such that it was foreseeable they might be bound.[2] *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 183 (Ill. App. Ct. 2014). Plaintiff names five individuals—Krsteski, Williams, Bush, Pope, and Jovovich[3]—as Defendants. The allegations in the Complaint concerning these individuals relate solely to conduct undertaken within the scope

---

[2] The Sixth Circuit has expressly foreclosed the "closely-related" doctrine under federal common law. *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 327 (6th Cir. 2024). Instead, the Sixth Circuit requires federal courts sitting in diversity to undergo a choice-of-laws analysis using the law of the State in which it sits (here, Tennessee) to determine the governing law, then to interpret the contract provision under that law. *Id.* In this case, Plaintiff appears to assert both diversity and federal question jurisdiction. Tennessee accepts choice-of-law provisions in contracts if "the state whose law is chosen bears a reasonable relation to the transaction and absent a violation of the forum state's public policy." *Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556 (Tenn. Ct. App. 2016) (quoting *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton,* 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012)). Consequently, as Illinois bears a reasonable relation to the transaction as it is the Defendants' domicile and the location of many of the events that gave rise to this lawsuit, the Court will apply Illinois law to govern the interpretation of the Agreement's forum selection clause. *See Firexo*, 99 F.4th at 328 (applying the forum selection clause's chosen forum law to determine whether the contract is enforceable against non-signatory third parties).

[3] Krsteski is the "principal, officer, and/or owner" of KSM, Williams is a recruiter, Bush is a safety director, Pope is a dispatcher, and Jovovich is an accountant for KSM and A2B.

of their employment with KSM. Plaintiff argues that the individual Defendants engaged in independent tortious conduct: that Jovovich "as KSM's accountant, unlawfully withheld revenue"; that Pope "imposed unauthorized route restrictions"; and that Williams "made fraudulent recruiting promises." But these actions form part of the basis for Plaintiff's breach of contract claim against KSM, and Jovovich and Pope were acting pursuant to the terms of the Agreement. Further, it is foreseeable that KSM employees would be bound by their employer's contract. Additionally, Plaintiff named A2B Cargo, KSM's sister company, as a Defendant, alleging that A2B Cargo made an advertisement for KSM's independent contractor opportunity that he responded to. The alleged disconnect between A2B's advertisement and the KSM contract is one of the primary facets of Plaintiff's breach of contract claim against KSM. Though A2B was not a party to the Agreement, by performing advertising work to find drivers for KSM, any misrepresentations in their advertisements would be closely related to KSM's contracts. The individual Defendants and A2B Cargo are all clearly closely related to Plaintiff's dispute such that it was foreseeable that they would be bound by the Agreement.

Plaintiff argues that his fraud, conversion, and RICO claims fall outside the forum selection clause's scope as these are independent torts not relating to the Agreement. Plaintiff does not provide a legitimate source of law in support of this proposition. [*See* Doc. 23, Show Cause Order]. The Court will not consider arguments grounded solely on fraudulent citations or misrepresentations of law. *See* Local Rule 7.4 ("The Court will not consider improperly cited authority.")

Additionally, Plaintiff argues that the forum selection clause is unenforceable due to Defendants' material breach of the contract. Plaintiff again relies on fake citations and recites an

incorrect statement of law, claiming that "[u]nder Tennessee law, a party who materially breaches a contract cannot enforce its provisions," [Doc. 18, pg. 4; *see infra* II.D].

The remaining issue is whether the forum selection clause is enforceable. The Sixth Circuit has identified three factors for courts to consider when evaluating enforceability: (1) whether the clause was obtained by "fraud, duress, or other unconscionable means"; (2) whether the chosen forum would ineffectively or unfairly handle the suit; and (3) whether the chosen forum would be "so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at 828. The party opposing application of the forum selection clause has the burden of proving that the clause should not be enforced. *Id*.

All three factors weigh in favor of enforcing the forum selection clause. To the first and second factors, Plaintiff argues that the forum selection clause was induced by fraudulent misrepresentations because Defendants intended to "exploit Illinois' lack of wage protections" and "conceal fraud through Illinois' business-friendly courts." Plaintiff provides no basis for these allegations. Additionally, he claims that Defendants fraudulently induced him into signing the entire Agreement because they misrepresented "no forced dispatch," revenue potential, and lease-to-own terms. But the law in the Sixth Circuit is clear: the only issue is whether the forum selection clause itself was obtained by fraud; "a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause." *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006) (quoting *Moses v. Bus. Card Express*, 929 F.2d 1131 (6th Cir. 1991). Plaintiff raises no concerns regarding the third factor. Thus, Plaintiff has failed to satisfy his burden to prove that the forum selection clause should not be enforced.

6

Because the forum selection clause is applicable, mandatory, valid, and enforceable, the Court must now undergo *Atlantic Marine*'s modified forum non conveniens analysis to determine whether the case should be dismissed.

### C. Forum non conveniens

A court may dismiss a case on the ground of forum non conveniens if it best serves the convenience of the parties and promotes the interest of justice. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). Courts typically consider three factors to determine whether forum non conveniens applies. *VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 400 (6th Cir. 2025). First, some deference is afforded to the plaintiff's chosen forum. *Id.* Second, courts determine if the defendant has shown that an adequate alternative forum exists. *Id.* And third, courts balance public and private interests to choose between the two forums. *Id.* Typically, the relevant public and private factors include access to witnesses and evidence, availability of compulsory process, cost of obtaining witnesses, administration difficulties for the trial court, local interest in the litigation, and the law applicable to the controversy. *Atl. Marine*, 571 U.S. at 62 n.6.

However, where a forum selection clause is present courts modify the analysis in three ways. First, "the plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S. at 63. Second, courts "should not consider arguments about the parties' private interests," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a [dismissal under the forum non conveniens doctrine] will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

7

Here, the forum non conveniens doctrine applies as Illinois is an adequate alternative forum and Plaintiff has failed to present sufficient public interests to overcome the parties' contractual agreement to litigate in Illinois. Plaintiff identifies only one public interest factors for the Court to consider: judicial economy. He argues that dismissing this case would waste judicial resources as pursuing these claims again in an Illinois court would duplicate efforts. But this Court has not engaged in any analysis of Plaintiff's claims on their merits, nor has the Court held any hearings or considered any substantial motions before this motion to dismiss. Other than requiring Plaintiff to refile his Complaint in an Illinois court, there would be minimal to no duplication if the Court dismissed this case and Plaintiff chose to refile in the agreed-upon forum.

As the private-interest factors necessarily weigh entirely in favor of Illinois due to the forum selection clause, and no public interest factors support a Tennessee forum, dismissal of this case under the doctrine of forum non conveniens is appropriate.

**D. The Show Cause Order**

On March 5, 2026, the Court ordered Plaintiff to show cause by March 12, 2026 why he should not be sanctioned pursuant to Fed. R. Civ. P. 11(b) & (c)(3), 28 U.S.C. § 1927, and the inherent power of the Court for submitting a brief containing apparently fictitious quotations to court decisions and misrepresenting the holdings of various cases. As of today, March 16, 2026, Plaintiff has not responded. Because the Court also ordered Defendants' counsel to file a sworn declaration by March 26, 2026 identifying any reasonable costs they incurred investigating the false citations and holdings, the Court will wait to address sanctions until after that date.

**III. CONCLUSION**

For the reasons stated herein, Defendants' motion to dismiss [Doc. 10] is **GRANTED**.

A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

9